UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOEL CARDENAS,

Petitioner,

v.

TIM GARRETT, *et al.*,

Respondents.

Case No. 3:15-cv-00476-MMD-CLB

ORDER

## I.    SUMMARY

On July 2, 2024, the Court granted habeas relief on Ground 2 of Petitioner Joel Cardenas's First Amended Petition for a Writ of Habeas Corpus brought under 28 U.S.C. § 2254 (ECF No. 39 ("Petition")). (ECF No. 93.) Judgment was entered, and this case was closed. (ECF No. 94.) On July 30, 2024, Respondents filed a Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e). (ECF No. 95 ("Motion").)[1] Cardenas filed a response to the Motion (ECF No. 100), and Respondents replied (ECF No. 104-1). For the reasons discussed below, the Motion is denied.

## II.   BACKGROUND

### A.    Trial Proceedings

In 2011, Cardenas, was charged by information in Nye County, Nevada, with one count of sexual assault of Emma Sundstrom. (ECF No. 92-3.) The testimony at trial established that Sundstrom and Cardenas consumed significant amounts of alcohol and were the only individuals present during the alleged sexual assault. (ECF No. 93 at 2-6.) The parties agreed that Cardenas and Sundstrom had sexual contact, but disputed

---

[1]The Motion's heading refers to Fed. R. Civ. P. 59(e), however, in the body of the Motion, Respondents refer to Fed. R. Civ. P. 60(b) without specifying upon which subdivision of Rule 60b(b) they rely. (ECF Nos. 95 at 1-2, 104-1 at 2.) The Court will presume Respondents rely on subdivisions 60(b)(1) and (6).

1   whether Sundstrom consented to the sexual contact or whether Cardenas's actions

2   occurred under conditions in which he knew or should have known that she was mentally

3   or physically incapable of resisting or understanding the nature of her conduct. (*Id.*)

4   Trial counsel was aware that evidence would be admitted that would undermine

5   Cardenas's credibility, i.e., Cardenas had a prior conviction for second-degree murder,

6   arguably fled the jurisdiction when facing his initial trial date for the sexual assault charge,

7   failed a polygraph examination, and admitted to the police that he initially lied to police

8   and during the polygraph examination when he said he had no sexual contact with

9   Sundstrom. (ECF Nos. 45-50 at 5-6; 93 at 4-6, 43-44, 51-53.) Counsel also knew

10  evidence would be admitted demonstrating Sundstrom had passed a lie-detector test.

11  (ECF No. 93 at 5.) Sundstrom was the key witness for the prosecution's case and the jury

12  was instructed that, if they believed Sundstrom, they could convict Cardenas based solely

13  on her uncorroborated testimony. (ECF No. 45-60 at 33 ("A verdict of guilt may be based

14  on the uncorroborated testimony of the victim alone so long as you are convinced that the

15  State has proved each element of the crime beyond a reasonable doubt.").)

16  During jury selection, Juror 11 was not asked whether he recognized the name of

17  any individual related to the case, including Sundstrom, who was listed on a board. (ECF

18  No. 45-50 at 28-33, 102-05.) Juror 11 was seated on the jury and, following the delivery

19  of the State's opening remarks in which the prosecutor repeatedly referred to Sundstrom

20  as "Emma," Juror 11 alerted the parties that he knew an "Emma," but did not know "by

21  last names." (ECF Nos. 45-50 at 102-05; 45-51 at 2; 92-13 at 10-15.) The trial court told

22  Juror 11 he would have an opportunity to see Sundstrom during her testimony and asked

23  Juror 11 to alert the court at that time. (*Id.*) During a break from Sundstrom's testimony,

24  Juror 11 confirmed he knew Sundstrom. (ECF Nos. 92-13 at 41; 92-14 at 21-24.) The

25  court and defense counsel questioned Juror 11 about his relationship with Sundstrom:

26      THE COURT: [Y]ou mentioned earlier that you might be acquainted with
        this young lady from her work. And I believe that this is the same lady,
27      correct?

28      JUROR NO. 11: Yes, it is. I did see her last night. I do work with her.

2

THE COURT: Now, is there anything about that acquaintanceship that influences you in any way to give her more or less credibility than any other witness?

JUROR NO. 11: No, no.

THE COURT: Anyone desire to ask him about this?

[DEFENSE COUNSEL]: Just briefly.

How long have you known—worked with her at the Nugget?

JUROR NO. 11: I do believe I started—it will be almost three years.

[DEFENSE COUNSEL]: And during the course of the time that you've worked with her, had you ever had occasion to talk with her?

JUROR NO. 11: I did not see her that much because I work on day shift, she works basically swing. Sometimes a few times a month maybe, and the only conversation I had with her was if I see her at the pit when I'm dealing and I'm on a dead game, Good morning or Good afternoon, and that was very rare that I seen [sic] her.

[DEFENSE COUNSEL]: But it's nothing more than that?

JUROR NO. 11: No.

[DEFENSE COUNSEL]: Thank you.

THE COURT: Anybody have any problem with him remaining on the jury?

[DEFENSE COUNSEL]: No.

(ECF No. 92-14 at 23-24.) The jury convicted Cardenas and he was sentenced to life with the possibility of parole after a minimum of ten years of imprisonment. (ECF No. 45-72.)

**B.    Federal Habeas Proceeding**

Ground 2 of the Petition alleged trial counsel was ineffective in failing to move to excuse Juror 11 for presumptive or implied bias and that counsel's actions led to the empanelment of a biased juror, which violated the right to a fair and impartial jury, all in violation of the Sixth and Fourteenth Amendments. (ECF Nos. 39 at 17-19; 85 at 18-20.) This Court ruled Ground 2 is technically exhausted by procedural default, subject to the question whether Cardenas can overcome the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). (ECF No. 72 at 4-5.) Respondents answered the Petition arguing Cardenas could not overcome the default because he did not establish a substantial claim that trial counsel's conduct was deficient or prejudicial. (ECF No. 78 at 12-16.) They argued a

motion to remove Juror 11 would have been denied as, during jury selection, the trial court declined to excuse for-cause jurors who knew witnesses. (*Id.*) This Court granted a writ of habeas corpus on Ground 2, after finding, based on the circumstances presented in the state-court record, that Cardenas established cause and prejudice to overcome the procedural default, trial counsel's failure to seek removal of Juror 11 for presumptive bias constitutes deficient performance, and Cardenas was prejudiced because the juror was presumptively biased. (ECF No. 93 at 23-39.) After the entry of the judgment, Respondents submitted the present Motion.

**A. GOVERNING LEGAL STANDARDS**

Rule 59(e) of the Federal Rules of Civil Procedure provides that any "motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." The Supreme Court has stated that Rule 59(e) "gives a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 590 U.S. 504, 507-08 (2020) (citing *White v. New Hampshire Dep't of Emp. Sec.*, 455 U.S. 445, 450 (1982)). "In keeping with that corrective function . . . courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Id.* (internal citation omitted). *See also Kona Enterprises, Inc. v. Est. of Bishop*, 229 F.3d 877, 890-91 (9th Cir. 2000) (stating that a Rule 59(e) motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier."). "A district court has considerable discretion when considering a motion to amend a judgment under Rule 59(e)." *Turner v. Burlington N. Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003). For purposes of appeal, the ruling on a Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment. *See Banister*, 590 U.S. at 509.

According to Rule 60(b) of the Federal Rules of Civil Procedure, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" based on several grounds, including subdivision (b)(1) for "mistake, surprise, or excusable neglect," and (b)(6) for "any other reason justifying relief from the

4

operation of the judgment." *See* Fed. R. Civ. P. 60(b)(1), (6). A motion under Rule 60(b) "is proper when it 'attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings.'" *Wood v. Ryan*, 759 F.3d 1117, 1120 (9th Cir. 2014) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). To seek relief under Rule 60(b)(6), a moving party must show "extraordinary circumstances justifying the reopening of a final judgment." *Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (quoting *Gonzalez*, 545 U.S. at 535)). Such circumstances "rarely occur in the habeas context." *Id.* Motions made under Rule 60(b) "are addressed to the sound discretion of the trial court." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 832 (9th Cir. 1986) (citations omitted).

## IV.    DISCUSSION

Respondents contend this Court erred when it granted relief for Ground 2 of the Petition by (1) making factual findings inconsistent with the record and overlooking facts that demonstrate a reasonable strategic reason for counsel's decision to forego a request to dismiss Juror 11; and (2) failing, in its analysis of the *Strickland* prejudice prong, to apply Nevada law and instead applying federal authorities, for the determination of whether Juror 11 was presumptively biased. (ECF No. 95 at 2-11.) Cardenas argues that Respondents could have made these arguments earlier; the Court did not overlook facts or make findings inconsistent with the record; whether a juror is biased is not a state procedural question but a federal constitutional question; the Court properly applied binding federal law; and Respondents do not show that state law changes the outcome. (ECF No. 100 at 4-10.) For the reasons discussed in this Order, the Court denies the Motion.

### A.    The Court's Factual Findings

In section II(B) of their Motion, Respondents initially claimed the Court overlooked facts that gave trial counsel a reasonable strategic reason for keeping Juror 11 on the jury, namely that Juror 11 was one of the initial 12 jurors who were asked collectively whether they knew the witnesses and that Juror 11's failure to respond to that question

1  evidenced he did not know [Sundstrom] on a last name basis, and that Juror 11 informed
2  the parties his good friend was accused of sexual assault. (ECF No. 95 at 3-8.)

3      The record demonstrates Respondents confused Juror 11 (Gerard Sparno) (the
4  juror at issue for Ground 2 of the Petition), with Prospective Juror 10 (Michael Sprano).
5  Juror 11 was not one of the initial jurors who were collectively asked whether they knew
6  witnesses listed on the board; and it was Prospective Juror 10, not Juror 11, who had a
7  friend who was accused of sexual assault. (ECF Nos. 45-50 at 27-31, 40, 46, 72, 74-75,
8  101-05; 45-51 at 2.) Upon realizing their error, Respondents withdrew their arguments in
9  section II(B) of the Motion, except for arguments that the Court overlooked that trial
10 counsel had a reasonable strategic reason for his failure to request removal of Juror 11
11 because (1) Juror 11 did not know Sundstrom's last name; (2) Juror 11 said he maybe
12 saw her a few times a month; (3) their conversations were limited to "Good morning or
13 good afternoon"; and (4) Juror 11 saw her rarely. (ECF No. 104-1 at 3). Respondents also
14 withdrew arguments pertaining to post-conviction counsel's review. (*Id.*)

15     The Court's order shows it considered the facts Respondents alleged in the
16 Motion.[2] (ECF No. 93 at 24-39.) The Court quoted Juror 11's colloquy during trial in which
17 Juror 11 explained that he did not know "Emma" by her last name. (ECF No. 93 at 25.)
18 The Court recognized that Juror 11, unlike other prospective jurors, was not specifically
19 asked during his *voir dire* whether he recognized any of the names listed on the witness
20 board. (ECF No. 93 at 25.) The record shows that while the original 12 prospective jurors
21 were asked collectively whether they knew any of the individuals listed on the board, and
22 other prospective jurors who replaced those who were excused were asked, on an
23 individual basis, whether they knew any of the individuals listed on the board, the parties
24 did not similarly ask this of Juror 11 during his individual *voir dire*. (*See* ECF No. 45-50 at
25 27-39, 63, 76-77, 79, 88, 96-97, 102-105.) Moreover, the record of the jury selection

27  [2]As Cardenas points out, the Court's order noted that failure to mention a specific
28 piece of evidence or category of evidence does not signify the Court overlooked it in considering the issues. (ECF No. 93 at 2 n.3.)

6

shows that the trial court, without specifically asking other prospective jurors whether they knew individuals listed on the board, instead asked whether they wished "to comment" on anything they had heard during the questioning and disclosures of other prospective jurors, which yielded responses that those prospective jurors knew individuals listed on the board. (*Id.* at 91, 93-94, 96, 99, 107, 110-11, 113, 118.) However, neither the trial court nor the parties similarly asked Juror 11 whether he wished to comment on anything he heard during the questioning of the other prospective jurors. (*Id.* at 102-05.) The Court quoted Juror 11's colloquy where Juror 11 conveyed that he saw Sundstrom "[s]ometimes a few times a month maybe," and that the "only conversation" he had with her was when he was dealing a dead game, that included "Good morning or Good afternoon," that it was "nothing more than that," and that he "rarely" saw her. (ECF No. 93 at 25-27.)

The Court's order demonstrates that it considered the above facts identified by the Respondents in their Motion, within the context of additional facts and circumstances presented by the record, i.e., that Juror 11 and Sundstrom saw each other at work on a consistent basis at the same establishment for nearly three years, their interactions were cordial, he saw her at their place of employment on the night before she testified at Cardenas's trial, that due to their ongoing employment at the same establishment Juror 11 was accountable to Sundstrom because he would see her at work post-verdict, and Sundstrom was the key witness whose uncorroborated testimony could be the sole basis for conviction. (ECF No. 93 at 33-39.) The Court's decision demonstrates that it concluded, based on the totality of the circumstances, and not just the facts identified by Respondents in their Motion, that all fairminded jurists would agree that trial counsel had no objectively reasonable strategic reason to forego removal of Juror 11 for bias. *See Strickland,* 466 U.S. at 687-89.

In sum, Respondents fail to establish that the Court made factual findings that are inconsistent with the state-court record, that the Court overlooked facts in the state-court record that are material to the issues, or that extraordinary circumstances warrant alteration or amendment of the Court's order under Rules 59(e) or 60(b).

1

2

3

4

5

6

   **B.     Reliance on Nevada law.**

   Respondents contend the Court erred because it failed to consider two published decisions of the Nevada Court of Appeals, i.e., *Young v. State*, 534 P.3d 158 (2023), and *Sayedzada v. State*, 419 P.3d 184 (2018), and the theory of inferable bias.[3] (ECF No. 95 at 9-10.) For the reasons discussed below, the Court did not err by failing to consider state law or the doctrine of inferable bias.

7

8

9

10

11

12

13

14

15

16

17

18

   First and foremost, neither party directed the Court to any Nevada cases or statutes for its consideration of Ground 2; instead both parties cited only federal cases. (ECF Nos. 39 at 17-19; 78 at 12-16; 85 at 18-20.) In their Answer, Respondents could have directed the Court to the 2018 decision in *Sayedzada*. They likewise could have alerted the Court to the decision in *Young* before the Court's decision. They did neither. Moreover, as those cases postdate Cardenas's trial and the finality of his judgment in 2012 (ECF Nos. 12-7, 45-50), they are not candidates for measuring trial counsel's performance or resulting prejudice as of the time of the trial. *See Strickland*, 466 U.S. at 689 (holding fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time).

19

20

21

22

23

24

25

26

   Respondents argue the Court's determinations as to whether trial counsel's performance was deficient, and whether Cardenas was prejudiced because Juror 11 was presumptively biased, are questions of state law, and it was error to rely exclusively on federal cases. (ECF No. 95 at 2, 8-9.) When conducting federal habeas review, a court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the *United States. See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The Supreme Court has stated that "[d]ue process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand

27

28

---

   [3]Respondents incorrectly characterize the decision of the Nevada Court of Appeals in *Young* as a decision of the Supreme Court of Nevada. (ECF No. 95 at 9.)

impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992). In *Strickland,* the Supreme Court recognized the Sixth Amendment guarantee of a right to effective assistance of trial counsel in criminal proceedings. *See Strickland*, 466 U.S. at 687. And the Ninth Circuit has held that "[e]stablishing *Strickland* prejudice in the context of juror selection requires a showing that, as a result of trial counsel's [ineffective assistance], the jury panel contained at least one juror who was biased." *Davis v. Woodford,* 384 F.3d 628, 643 (9th Cir. 2004). Thus, the impartiality of a juror is a federal constitutional right whether or not it is guaranteed by the State of Nevada, and therefore it is appropriate to rely upon relevant and binding federal authorities of the Supreme Court and the Ninth Circuit Court of Appeals, for its determination whether counsel was ineffective and whether Cardenas was prejudiced because Juror 11 was presumptively biased.

To the extent that state law is implicated, if at all, by the questions whether trial counsel's failure to request removal of Juror 11 was deficient and whether Cardenas was prejudiced because Juror 11 was presumptively biased, federal courts are "[b]ound by decisions of the state's highest court" when interpreting relevant state law. *See Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia*, 379 F.3d 557, 560 (9th Cir. 2004). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Nelson v. City of Irvine*, 143 F.3d 1196, 1206 (9th Cir. 1998) (quoting *In re Bartoni-Corsi Produce, Inc.*, 130 F.3d 857, 861 (9th Cir. 1997)). When there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts in interpreting state law. *See id.* at 1207.

Here, Respondents do not allege that the Court overlooked controlling precedent of the Nevada Supreme Court. *Young* and *Sayedzada* are not controlling cases as they postdate Cardena's trial. Assuming *arguendo* there is no controlling precedent from the Nevada Supreme Court and that *Young* and *Sayedzada* are relevant for determining the

9

condition of state law concerning juror bias, those cases rely on federal cases, are not precedent for implied bias, and demonstrate that inferable bias is irrelevant to the determination whether Juror 11 was presumptively biased.

*Young* is not controlling, and it relied on federal authority for its explanation of implied or presumptive bias. *See Young*, 534 P.3d at 172 (citing *United States v. Wood*, 299 U.S. 123, 133 (1936); *United States v. Torres*, 128 F.3d 38, 43-44 (2d Cir. 1997)). Relying on *Wood*, the Nevada Court of Appeals stated that "implied bias, or presumed bias, is 'bias conclusively presumed as [a] matter of law,' generally due to the juror's prior knowledge or relationship to the case or parties." *Id.* (citing *Wood*, 299 U.S. at 133). The court in *Young* further acknowledged that, "[i]f a juror's statements establish implied or inferable bias, it does not matter whether that juror subsequently expresses impartiality; that juror must be removed." *Id.* at 172-73 (citing *Sayedzada*, 419 P.3d at 192). This Court may not have cited *Young*, but in its order granting the writ, the Court discussed the same principles concerning implied or presumptive bias and the relevant federal authorities relied upon by the court in *Young*. (ECF No. 93 at 28-38.) Additionally, the appellant in *Young* argued only actual or inferable bias ("[O]ur resolution of this issue turns on whether juror no. 11's statements demonstrated inferable bias or actual bias").[4] *Young*, 534 P.3d at 173. Thus, in *dictum*, the Nevada Court of Appeals stated that "[t]he court's discussion and questioning with juror no. 11 demonstrated that he did not have an implied . . . bias." *Young*, 534 P.3d at 173. This conclusion regarding implied bias was "unnecessary to a determination of the questions involved" and therefore the decision in *Young* is not controlling precedent on the issue of implied or presumptive bias under state law. *See St. James Vill., Inc. v. Cunningham*, 210 P.3d 190, 193 (2009) ("Dictum is not controlling.") (citing *Camacho v. State,* 75 P.3d 370, 373 n.7 (2003)). *See also id.* (noting that a statement in a case is dictum when it is "unnecessary to a determination of the questions involved").

///

---

[4]The Juror at issue in *Young* was coincidentally "juror no. 11."

*Sayedzada* is not controlling state-court precedent for implied juror bias because the Nevada Court of Appeals stated that because the "facts in this case ultimately do not rise to the level of implied bias, we need not attempt to define its parameters here." *Sayedzada*, 419 P.3d at 192 (citing *Torres*, 128 F.3d at 46 ("[T]he doctrine of implied bias is reserved for 'exceptional situations' in which objective circumstances cast concrete doubt on the impartiality of a juror.") (citing *Smith v. Phillips*, 455 U.S. 209, 222 (1982) (O'Connor, J., concurring)); *Tinsley v. Borg*, 895 F.2d 520, 527 (9th Cir. 1990) (urging prudence in formulating categories that bar jurors)). The court in *Sayedzada* nonetheless relied on the decision in *Torres* for definitions of the three types of bias: actual, implied, and inferable. *See id.* In doing so, the Nevada Court of Appeals stated that "implied bias, or bias as a matter of law, depends solely on the juror's background and/or relationship to the parties or case, and exists independently of actual bias." *Id.* (citing *Torres*, 128 F.3d at 45). The court in *Sayedzada* held the trial court erred by failing to grant a challenge for cause for a prospective juror for actual bias but that the error was harmless because the defendant excused that juror by peremptory challenge. *See id.* at 192-94. In *dictum*, the court stated that, "[e]ven if there was no actual bias, these facts would have supported striking" that juror "for inferable bias." *Id.*

Failure to discuss inferable bias does not require alteration or amendment of the order granting habeas relief for Ground 2 because the availability of the inferable bias theory does not change the Court's determinations. In *Sayedzada*, the Nevada Court of Appeals acknowledged that, according to *Torres*, 128 F.3d at 47, inferable bias "arises where a juror discloses some fact that 'bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, *but not so great as to make mandatory a presumption of bias.*'" 419 P.3d at 192 (emphasis added). The Court of Appeals explained that inferable bias is distinct from actual and implied bias: "[t]here is no actual bias because there is no finding of partiality based upon either the juror's own admission or the judge's evaluation of the juror's demeanor and credibility following *voir dire* questioning as to bias" and there is no implied bias because "*the*

*disclosed fact does not establish the kind of relationship between the juror and the parties or issues in the case that mandates the juror's excusal for cause.*" *Id.* (citing *Torres*, 128 F.3d at 47) (emphasis added). In *Young*, the Nevada Court of Appeals stated that "inferable bias has only been found in limited circumstances, namely where the juror has engaged in activities similar to those activities at issue in the case being tried such that a reasonable person in the juror's position could not compartmentalize their past experiences to objectively judge the case." *Young*, 534 P.3d at 172. Here, inferable bias is irrelevant. Cardenas did not allege inferable bias. He alleged that Juror 11 was biased, not because he had engaged in activities similar to those at issue in the case, but the juror was presumptively biased due to the circumstances surrounding his relationship to the victim.

In their Motion, Respondents neglected to cite to two unpublished, but citable,[5] cases from the Supreme Court of Nevada that, like *Young* and *Sayedzada,* are not controlling because they postdate Cardenas's trial: *Latorre v. State*, 462 P.3d 1231 (2020) and *Raspperry v. State*, 519 P.3d 1265 (2022). Assuming *arguendo* that it is appropriate to rely upon *Latorre* and *Raspperry*, neither is persuasive nor contradicts the cases that this Court relied upon for its determination of Ground 2.[6]

In *Latorre*, the Nevada Supreme Court held a trial court did not err in failing to remove a juror who saw a trial witness at her place of employment *on one occasion* about

---

[5]According to Nev. R. App. P. 36(c)(2) and (3):

> (2) An unpublished disposition, while publicly available, does not establish mandatory precedent except in a subsequent stage of a case in which the unpublished disposition was entered, in a related case, or in any case for purposes of issue or claim preclusion or to establish law of the case.

> (3) A party may cite for its persuasive value, if any, an unpublished disposition issued by the Supreme Court on or after January 1, 2016, or by the Court of Appeals on or after August 15, 2024.

[6]Respondents' argument that under NRS § 16.050, "[t]here is no presumption under Nevada law that a challenge for cause of Juror #11 would have resulted in the removal of Juror #11" is inapplicable. (ECF No. 104-1 at 4.) The basis for Juror 11's bias was not discovered during jury selection when a motion for cause was appropriate; it was discovered during Sundstrom's testimony during the trial.

a month before trial, recognized the witness because of a distinctive physical feature, and unequivocally stated the incident did not affect the juror's ability to be impartial. *See* 462 P.3d at 2. The trial court concluded nothing about the incident warranted removing the juror, and the Nevada Supreme Court held that, "under these facts, we are not persuaded by Latorre's contention that implied bias warranted the juror's removal." *Id.* (citing *Sayedzada*, 419 P.3d at 191-92) (discussing the potential biases that would warrant removing a juror for cause) and *Leonard v. State*, 969 P.2d 288, 295-96 (1998) (concluding that the district court did not abuse its discretion by not removing jurors who had incidental contact with a witness because the contact did not prejudice the defendant in the context of a motion for a mistrial)). *Latorre* did not foreclose a finding of implied bias under different and more compelling facts such as those presented by Cardenas's case. Given that *Latorre* postdates Cardenas's trial, the facts are distinguishable, and *Latorre* does not contradict the federal authorities relied upon by the Court, the Court did not err in failing to address *Latorre* in its order granting relief.

The Nevada Supreme Court decided in *Raspperry* that a trial court plainly erred in failing to inquire into the bias of a juror who, during a break in a witness's testimony, informed the court that he knew the witness. *See* 519 P.3d at 4. The court held that appellant failed to establish prejudice, i.e., "that a biased juror served on his jury," because trial counsel neglected to ensure the trial court *voir dired* the juror about the relationship as the court had promised. *Id.* Given the record, the court held that the "juror's mere acquaintance with the witness did not establish actual or implied bias." *Id.* (citing *United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986) (concluding that, while a potential juror's acknowledgment that he was acquainted with government witnesses would necessitate further inquiry, that fact in and of itself does not compel a conclusion of bias); *Tinsley*, 895 F.2d at 528-29 (noting that, absent actual bias, courts have declined to find implied bias based on a juror's personal acquaintance with a witness)).

Here, the questioning by trial counsel and the court revealed that Juror 11 had more than a mere acquaintanceship with Sundstrom. They had positive interactions with

each other over the course of three years at their mutual place of employment, he saw her the night before she testified at trial, and due to their employment relationship, they would likely see each other post-verdict. (ECF No. 93 at 26-27.) Moreover, Sundstrom was not just an important witness; she was the key witness as no one other than Sundstrom and Cardenas was present during the alleged sexual assault, the dispute at trial centered on whether she consented to their sexual encounter, and the jury was instructed it could convict Cardenas based solely on Sundstrom's uncorroborated testimony. (*Id.* at 32-33.) Because the decision in *Raspperry* postdates Cardenas's trial, the facts are distinguishable, and nothing in that decision contradicts the federal authorities relied upon by the Court, the Court did not err in failing to address *Raspberry* in its order granting relief. Moreover, as the State of Nevada routinely relies on federal authorities for its analyses of juror bias, reliance on federal cases is appropriate and the failure to acknowledge the state cases in this particular instance has no effect on the Court's determinations. (*Id.* at 27-31.)

## V.    CONCLUSION

It is therefore ordered that the "Motion to Alter or Amend Judgment (ECF No. 93) under Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60(b) (ECF No. 95) is denied.

DATED THIS 23rd Day of September 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE